IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| JIHAAD SPEARMAN, | ) | |
| Petitioner, | ) | |
| v. | ) | 1:11-cr-571 (JCC) |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**M E M O R A N D U M O P I N I O N**

This matter is before the Court on pro se Petitioner Jihaad Spearman's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 due to ineffective assistance of counsel. (Petition [Dkt. 53].) As described below, the Court will deny the petition.

**I. Background**

On December 9, 2011, Jihaad Spearman ("Spearman" or "Petitioner") pleaded guilty to a single-count criminal information charging him with knowingly and intentionally possessing with the intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). (*See* Plea [Dkt. 19].) On March 2, 2012, this Court sentenced Spearman to 92 months imprisonment, followed by a four year term of supervised release. Spearman did not appeal.

Spearman's conviction arose from the following circumstances.[1] In April 2011, a confidential source informed the Fairfax County, Virginia Police Department ("FCPD") that Spearman was involved in the distribution of narcotics in the area. (PSR ¶ 14.) The source arranged a meeting on April 29, 2011, where Spearman sold 3.6 grams of cocaine base to an undercover FCPD officer. (PSR ¶ 15.) Spearman gave the undercover officer his phone number so the officer could call if he wished to buy more drugs. (PSR ¶ 15.)

The undercover officer contacted Spearman on June 1, 2011, and requested to purchase one ounce of cocaine base. (PSR ¶ 19.) Spearman directed the officer to deposit $1,400 into a bank account for Spearman to use to purchase the drugs. (PSR ¶ 19.) Spearman then purchased the cocaine base with the deposited money and arranged a time and location to meet the officer. (PSR ¶¶ 19, 20.) When the two met at Spearman's chosen location, the officer recorded Spearman selling him 37.1 grams of cocaine base. (PSR ¶ 20.)

Sometime after that transaction, FCPD officers placed a warrantless GPS tracking device on Spearman's vehicle. (Richman

[1] Unless otherwise noted, these facts are derived from the Presentence Investigation Report's uncontested statement of facts. (*See* PSR [Dkt. 22]; *see also* Tr. [Dkt. 49] at 3-4 (noting Spearman's lack of objection to PSR).)

[Dkt. 60] ¶ 7.)[2] On July 5, 2011—about a month after the controlled purchase of 37.1 grams of cocaine base—FCPD officers arrested Spearman after conducting a traffic stop. (Richman ¶ 7; PSR ¶ 21.) A later search of Spearman's vehicle discovered 26 grams of cocaine hydrochloride and 17 grams of cocaine base. (PSR ¶¶ 21, 24.)

Acting under the advice of Federal Public Defendant Todd Richman, Spearman pleaded guilty to a single-count criminal information for possession with intent to distribute 28 grams or more of cocaine base on December 9, 2011. The only drug transaction charged in the information or discussed in the plea agreement's statement of facts was the 37.1 grams of cocaine base Spearman sold on June 2, 2011. (*See* SOF [Dkt. 20].) The subsequent discovery of drugs in Spearman's vehicle was not part of the plea or criminal information. The 37.1 grams involved in the June 2 transaction earned Spearman a base offense level of 26 under the 2011 U.S. Sentencing Commission Guidelines,[3] and subjected him to a statutory mandatory minimum of 5 years imprisonment with a maximum of 40 years imprisonment.[4] At sentencing, the Court also considered the weight of the drugs discovered in Spearman's vehicle on July 5, 2011. The addition of those drugs, however, did not alter Spearman's base offense level or statutory sentencing provisions. (PSR ¶¶ 25, 80; Richman ¶ 8.)

---

[2] Spearman did not file a rebuttal affidavit to Richman's declaration, despite being notified of his right to do so.

[3] *See* U.S.S.G. § 2D1.1(c)(7) (2011).

[4] *See* 21 U.S.C. § 841(b)(1)(B)(iii).

On September 15, 2015, Spearman petitioned to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, based on three claims of ineffective assistance of counsel. On October 19, 2015, Federal Public Defender Richman filed a declaration regarding his defense of Spearman. (Richman [Dkt. 60].) On November 9, 2015, the Government filed its opposition to Spearman's motion. Spearman received notice of his right to respond to Richman and the Government, but Spearman did not do so. This petition is now ripe for disposition.

## II. Standard of Review

Section 2255 of Title 28 of the U.S. Code permits a prisoner to challenge his sentence as "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).[5] A claim of ineffective assistance of counsel is a well-recognized basis for asserting a section 2255 motion. *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997). The familiar *Strickland* standard for evaluating that claim requires the petitioner to prove (1) his counsel's performance was deficient; and (2) the deficient performance was prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). The petitioner bears the burden of demonstrating his grounds for relief by a preponderance of the evidence. *See Hall v. United States*, 30 F. Supp. 2d. 883, 889 (E.D. Va. 1998).

---

[5] The additional bases for relief under § 2255(a) are not relevant to this proceeding.

To prove deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that the acts and omissions of counsel were "outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 688, 690. The court must assess counsel's performance in light of all the circumstances and apply a "highly deferential" review with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000).

To satisfy *Strickland*'s prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). The court must make that prediction "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill*, 474 U.S. at 60 (quoting *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984)). In other words, the petitioner "must convince the court

that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

The Court will now apply those standards to Spearman's petition. Spearman alleges[6] the following three claims of ineffective assistance of counsel: (1) failure to advise, prior to the plea colloquy, that *United States v. Jones*, 132 S. Ct. 945 (2012), held that tracking a vehicle through a GPS device is a "search" within the meaning of the Fourth Amendment; (2) failure to suppress evidence obtained pursuant to the placement of a warrantless GPS device on Spearman's vehicle; and (3) failure to advise Spearman of the availability of an entrapment defense.[7] The Court will address each claim separately.

---

[6] The Court construes Spearman's pro se allegations liberally. *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013). That construction, however, does not require the Court to attempt to discern Petitioner's unexpressed intent. *Id.*

[7] As a fourth basis for relief, Spearman states that the first three claims of ineffective assistance rendered his plea "not knowingly or voluntary." (Petition at 4.) The Court does not list that claim separately because the "prejudice" factor subsumes those allegations. *See Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985) (applying *Strickland* standard to allegation that defendant who pleads guilty with advice of counsel did so involuntarily or unknowingly). To the extent Petitioner attempts to raise any new ground for relief in his Memorandum in Support [Dkt. 61], the Court will consider those allegations within the framework of his original petition, but will not consider such arguments as new claims of ineffective assistance of counsel. *See Moore v. United States*, No. 2:02-cr-225, 2006 WL 167662, at *2 n.2 (E.D. Va. Jan. 23, 2006), appeal *dismissed*, 232 F. App'x 291 (4th Cir. 2007) ("Any new arguments presented in petitioner's response that were not raised in petitioner's original § 2255 motion are not properly

A. The Statute of Limitations Bars this Petition

As an initial dispositive issue, the Court must deny Spearman's petition as untimely. "A person convicted of a federal offense has one year to file a § 2255 motion." 28 U.S.C. § 2255(f). In most cases, as in this case, the statute of limitations begins to run when the judgment of conviction becomes final. *Id.* § 2255(f)(1).[8] Because Petitioner did not directly appeal his sentence, the judgment of conviction became final when the judgment was entered on March 2, 2012. *See United States v. Saquella*, No. 1:11-cv-1258, 2012 WL 405060, at *2 (E.D. Va.) (citing *United States v. Sanders*, 247 F.3d 139, 142-44 (4th Cir. 2001), *appeal dismissed*, 474 F. App'x 398 (4th Cir. 2012); *United States v. Jones*, No. 1:08-cr-1, 2011 WL 3269420, at *1 (E.D. Va. July 28, 2011), *appeal dismissed*, 463 F. App'x 231 (4th Cir. 2012).[9]

Spearman filed this petition on September 15, 2015, over two and a half years after his conviction on March 2, 2012. Accordingly, the Court must dismiss this petition as untimely, unless equitable tolling applies.

---

before this court, but rather, constitute a second or successive § 2255 motion.").

[8] The statutory circumstances for triggering the statute of limitations at a later date do not apply to this case. *See* 28 U.S.C. § 2255(f)(1)-(4). Petitioner does not argue otherwise.

[9] At the latest, Petitioner's conviction became final when his time to appeal elapsed on March 16, 2012. *See* Fed. R. App. P. 4(b)(1); *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005); *Crudup v. United States*, No. RDB-12-191, 2013 WL 1867031, at *1 n.2 (D. Md. May 2, 2013). Even if that later date applies, this § 2255 petitioner remains untimely.

A petitioner bears a "heavy burden" when attempting to evade the one-year § 2255 statute of limitation through equitable tolling. *Smith v. United States*, No. 1:15-cv-435, 2015 WL 5278349, at *2 (E.D. Va. Sept. 8, 2015). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Equitable tolling is appropriate in "'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (quoting *Harris*, 209 F.3d at 328 n.1)). A petitioner seeking equitable tolling must show by specific facts (1) that he diligently pursued his rights and (2) that some extraordinary circumstances stood in the way of his timely filing. *Holland v. Florida*, 560 U.S. 631, 633 (2010); *United States v. Ricks*, No. 1:11-cv-105, 2013 WL 1790145, at *4 (E.D. Va.), *appeal dismissed*, 542 F. App'x 238 (4th Cir. 2013).

Spearman argues that equitable tolling should apply because he was delayed in receiving the transcript of his sentencing proceeding. Spearman sent letters to the Court requesting his sentencing transcript for unspecified reasons on February 19, 2013, and again on April 22, 2013, before he was informed of the need to pay the standard transcript rate of about

$55. (*See* Petition [Dkt. 53] at 19-21.) About three months later, Spearman sent another letter stating he was "poor and destitute" and did not have the money for the transcripts. (Petition at 27.) Another three months later, Spearman finally filed a motion to proceed *in forma pauperis*. [Dkt. 29.] The Court granted that motion, but four months later Spearman filed another motion to proceed *in forma pauperis*, which the Court also granted. [Dkts. 31-33.] Finally in September 2014—over a year after his initial transcript request—Spearman moved to obtain the sentencing transcript free of cost pursuant to his *in forma pauperis* status. [Dkt. 37.] The Court denied that motion in a written order because Spearman did not demonstrate that the sentencing transcript was necessary to his collateral suit or that his suit was not frivolous. (*See* Order [Dkt. 37] at 2-4 (citing 28 U.S.C. § 753(f)).) The Fourth Circuit dismissed Spearman's appeal of that decision for failure to prosecute. (USCA Order [Dkt. 47].) The Court then delivered the transcripts to Spearman in June 2015 based on Spearman's representation that he would pay the required $55. To date, Spearman has not paid the outstanding balance for the transcripts. He filed this petition three months later.

The above facts do not satisfy Petitioner's high burden of proving that some extraordinary circumstance delayed his filing. As this Court has previously found, merely decrying a lack of access to transcripts is not sufficient to warrant equitable

tolling. *See Wigenton v. United States*, No. 1:09-cr-414, 2014 WL 7405799, at *2 (E.D. Va. Dec. 30, 2014). That conclusion is particularly apt where, as here, a petitioner creates his own lack of access by failing to pay for the transcripts or to satisfy his burden for obtaining transcripts free of cost.[10] Furthermore, Spearman's allegations do not arise from the sentencing transcripts. *Cf. United States v. MacCollom*, 426 U.S. 317, 327-28 (1976) ("The usual grounds for successful collateral attacks upon convictions arise out of occurrences outside of the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript.") Two of his claims involve counsel's actions prior to the plea colloquy, which was months before sentencing. His third claim relates to sentencing, but the transcript clearly defeats the claim, rather than support it. Accordingly, Spearman's delayed access to the sentencing transcript was not an extraordinary circumstance preventing his petition.

Even if the Court did toll the statute of limitations, Spearman's claim would still be untimely. Spearman waited more than eleven months after his conviction before requesting his transcripts for an unspecified reason. After Spearman obtained the

---

[10] It is the law of this case that Spearman was not entitled to a free transcript, despite his indigent status. (*See* Mem. Op. [Dkt. 37] at 3-4.) Spearman did not successfully appeal that ruling and may not properly do so through this collateral attack. (*See* USCA Order [Dkt. 47] (dismissing Spearman's appeal for failure to prosecute).)

transcripts through an unfulfilled promise to pay, he delayed three more months before filing his § 2255 petition. Accordingly, even if the Court equitably tolled the statute from the moment of Spearman's first transcript request until he obtained the transcripts, Spearman still failed to file this petition within the statutory one-year period. Consequently, the Court will deny the petition as barred by the statute of limitations.

B. Spearman's Claims of Ineffective Assistance are Meritless

Even if the statute of limitations did not bar this suit, the Court would deny Spearman's petition. The Court will consider each of Spearman's three claims of ineffective assistance in turn.

1. Failure to Advise of *United States v. Jones*

Spearman's first claim of ineffective assistance is that Federal Public Defendant Richman failed to advise him of the holding in *United States v. Jones*, 132 S. Ct. 945 (2012), prior to the plea colloquy. *Jones* held that the placement of a GPS tracking device on a suspect's vehicle and the use of that device to monitor the vehicle's movements is a "search" within the meaning of the Fourth Amendment. *Id.* at 949. Richman's alleged failure to advise Spearman of the then-pending *Jones* case before Spearman pleaded guilty was neither deficient nor prejudicial.

The Court holds Richman to an objective standard of reasonable assistance under the prevailing professional norms.

*Strickland*, 466 U.S. at 688. Professional norms do not require attorneys to be prescient of a new Supreme Court holding weeks before the holding is announced.[11] *See Felix v. Ryan*, No. CV-14-1800, 2015 WL 9472440, at *2 (D. Ariz. Dec. 2, 2015) ("Counsel's failure to predict that the Supreme Court would subsequently hold that GPS tracking could only be obtained through a warrant did not fall below objectively reasonable standards."). Spearman pleaded guilty on December 9, 2011, over six weeks before the Supreme Court concluded in *Jones* that the Fourth Amendment applies to GPS vehicle tracking. Accordingly, there was nothing unreasonable about Richman not advising Spearman about a Supreme Court ruling that did not exist at the time of Spearman's guilty plea.

Additionally, there was nothing prejudicial about Richman's lack of presage and advice regarding *Jones* because the holding in that case would not have affected Spearman's likelihood of pleading guilty in any way. Spearman pleaded guilty to one count of possession with intent to distribute relating only to his sale of 37.1 grams of cocaine base on June 2, 2011. The GPS

---

[11] Prior to *Jones*, district courts in this Circuit had held that it was not a "search" within the meaning of the Fourth Amendment to place a GPS tracker on a vehicle travelling on public roads. *See Brookshire v. Buncombe County, N.C.*, No. 1:10-cv-278, 2012 WL 136899, at (W.D.N.C. Jan. 18, 2012) ("[N]early every federal court to address the issues has held that the installation and use of a GPS device to track the location of a vehicle on public streets is not a search within the meaning of the Fourth Amendment."); *United States v. Narrl*, 780 F. Supp. 2d 645, 650-52 (D.S.C. 2011) (noting the "great weight of the law" rejects that the use of a GPS tracker is a "search").

device, however, was not placed on Spearman's vehicle until after that transaction. Thus, even if *Jones* applied at the time of Spearman's guilty plea, the holding in that case was inapplicable to evidence of Spearman's conduct before the GPS was placed on his vehicle. Accordingly, Spearman's first claim of ineffective assistance must be denied for failure to satisfy either the deficiency or the prejudice elements.

2. Failure to Suppress Narcotics Seized After Placement of GPS Device on Spearman's Vehicle

Spearman's second claim of ineffective assistance of counsel is that Richman failed to move to suppress the drugs discovered in his vehicle based on the holding in *Jones*. As described above, evidence obtained pursuant to the GPS device was not at all relevant to the single-count criminal information. Accordingly, Spearman's suppression-motion argument is only plausibly read as applying to Richman's assistance during sentencing. In other words, the Court liberally construes Spearman's second claim as attacking Richman's failure to move to exclude the drugs obtained after the July 5, 2011 traffic stop from being considered at sentencing. Even that claim, however, has no merit.

Richman acted reasonably regarding the consideration of the additional drugs at sentencing. The sentencing transcript clearly reveals that Richman argued to exclude the drugs discovered

in Spearman's vehicle. Richman argued that those drugs were obtained through a "warrantless GPS monitoring device, which has since been held in violation of the Fourth Amendment." (Tr. at 10.) Richman urged that this unlawful use of a GPS device "gives a ground for downward departure under the case law because there has been a clear violation of his Fourth Amendment rights and there's no remedy at all for it." (*Id.*) He reiterated that the Court "should certainly not consider that weight, and the Court should consider that there's an un-remedied Fourth Amendment violation here in considering the totality of the circumstances." (*Id.*) Those arguments plainly refute any allegation that Richman performed unreasonably at sentencing because Richmond made the exact arguments that Spearman complains were omitted. *See Addy v. United States*, No. 1:13-cr-57, 2014 WL 1088833, at *4 (E.D. Va. Mar. 19, 2014) ("With defense counsel having raised the very issue Petitioner claims should have been asserted, Petitioner cannot now establish deficient performance or prejudice with respect to this claim.").

Furthermore, Richman's performance in no way prejudiced Spearman. Including the weight of the drugs seized on July 5, 2011, did not alter the guidelines recommendations or statutory provisions regarding Spearman's sentence. In other words, with or without the drugs seized on July 5, 2011, the guidelines and statutes would have recommended the same sentencing range.

Furthermore, the Court noted at sentencing that it would have rendered the same sentence, even if the July 5, 2011 drugs were not considered. (*See* Tr. at 15 ("[S]hould your counsel's arguments prevail, I feel under any circumstances 92 months would be the appropriate sentence [for] this case considering your involvement in this offense, your prior background.") Thus, there is no basis to conclude that Richman's failure to have the July 5, 2011 quantities excluded prejudiced Petitioner in any way.

3. Failure to Advise of a Potential Entrapment Defense

Spearman's allegation that Richman provided constitutionally ineffective assistance by failing to advise him of a potential entrapment affirmative defense is also unavailing. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Viewed objectively, there is no likelihood Spearman could have prevailed on an entrapment defense.

Entrapment has two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in criminal conduct. *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004) (citing *Matthews v. United States*,

485 U.S. 58, 62-63 (1998)). To show inducement, Petitioner must demonstrate "solicitation *plus* some overreaching or improper conduct on the part of the government." *Id.* at 200. In other words, the petitioner "must show not only that the government provided the opportunity to commit the crime, but also evidence of 'some excessive pressure by the government upon the defendant or the government taking advantage of an alternate, non-criminal type motive." *White v. United States*, No. 1:12-cv-309, 2015 WL 11112406, at *3 (E.D. Va. May 14, 2015) (quoting *Hsu*, 364 F.3d at 201). If the defendant can present "more than a scintilla of evidence that the government induced him to commit the charged offense," the burden shifts to the government to show "beyond a reasonable doubt that the defendant was disposed to commit the crime." *United States v. Sligh*, 142 F.3d 761, 762 (4th Cir. 1998).

The record conclusively shows that Petitioner had no valid entrapment defense. Spearman argues that FCPD officers entrapped him by placing $1,400 in a bank account, which made it possible for him to purchase more drugs than he otherwise could have afforded to supply. At best, that fact demonstrates the Government provided the opportunity to commit the crime, but does not show that the Government exhibited any undue influence. To the contrary, the totality of the circumstances shows Spearman acted free from any Government overreaching. Spearman volunteered his phone number to an undercover officer and instructed the officer to

call "for future drug transactions." (PSR ¶ 15.) When the officer did call, it was Spearman who directed the officer to place $1,400 in a bank account to facilitate the transaction. (PSR ¶ 19.) After using the money to obtain the drugs, it was Spearman who called the officer to set up the transaction and Spearman who instructed the officer about where the transaction should take place. (PSR ¶ 20.) The record does not contain a scintilla of evidence of inducement by the FCPD officers.

Furthermore, the record clearly establishes Spearman's predisposition to commit the offense. Spearman sold cocaine base to undercover officers at least once prior to June 2, 2011, and potentially as many as three times. (*See* PSR ¶ 15 (noting April 29, 2011 transaction); Richman Decl. ¶ 6 (noting additional transactions on May 6 and May 13, 2011).) Furthermore, Spearman admitted at the plea colloquy that "in June 2011, I possessed more than an ounce of 'crack cocaine' with the intent to distribute it." (PSR ¶ 30.) Thus, viewing the record as a whole, Spearman had a predisposition to commit the crime charged. In sum, Spearman's lack of knowledge about an inapplicable entrapment defense does not support his § 2255 petition.

Before concluding, it is worth noting some additional circumstances that show Spearman was not objectively likely to forgo the plea offered in order to test the Government's case through trial. First, the evidence demonstrating Spearman's guilt

was very strong, as the undercover officer recorded Spearman selling 37.1 grams of cocaine base on June 2, 2011. Second, Spearman had a compelling incentive for accepting an early plea in exchange for the Government agreeing not to charge him for his other sales of narcotics to the undercover officer. Additionally, Spearman's early plea induced the Government not to file an information under 21 U.S.C. § 851, which would have substantially increased Spearman's minimum sentence. (*See* Richman ¶ 10.) Under those circumstances, and without a valid affirmative defense, it would have been objectively unreasonable for Spearman to forgo the plea and proceed to trial. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (requiring petitioner to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances"); *Soza v. United States*, No. 1:12-cr-278, 2014 WL 1338671, at *4 (E.D. Va. Apr. 3, 2014); *Turner v. United States*, No. 1:07-cr-152, 2009 WL 577592, at *3 (E.D. Va. Mar. 4, 2009).

The Court reaches the above conclusions without an evidentiary hearing because the record conclusively shows that Spearman is entitled to no relief. *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010); *see also* 28 U.S.C. § 2255(b). Spearman's arguments are inconsistent with the face of the record and Richman's uncontested declaration. As such, they are subject to "summary dismissal." *United States v. Lemaster*, 403

F.3d 216, 221-22 (4th Cir. 2005); *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001). Furthermore, Spearman has not requested a hearing or identified or alluded to any evidence that might be produced or further investigated at such a hearing. Consequently, the Court reaches the above conclusions without resorting to the unnecessary expense of conducting a hearing.

## III. Conclusion

For the foregoing reasons, the Court will deny Jihaad Spearman's petition to vacate, set aside, or correct his sentence.

Spearman is advised that he may appeal from the final judgment entered pursuant to this Memorandum Opinion and accompanying Order by filing a written notice of appeal with the Clerk of this Court within sixty (60) days from the date of entry of this judgment. For the reasons discussed above, the Court, pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, declines to issue a certificate of appealability.

An appropriate order will issue.

/s/

July 19, 2016
Alexandria, Virginia

James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE